## LEXINGTON AND WEST CAMBRIDGE RAILROAD COMPANY *vs.* FITCHBURG RAILROAD COMPANY.

Commissioners appointed under *St.* 1845, *c.* 191, "to determine the rate of compensation to be paid " by one railroad corporation entering upon the road of another, for drawing its cars, passengers and merchandise, may fix the times at which such trains shall be drawn, if not agreed upon by the parties; and may award to the first corporation the right to run a certain number of independent special trains over the other's road, and to fix the times at which they shall be run, provided such times are not within fifteen minutes of the time of any regular passenger train thereon, and the stations at which they shall stop; and also to choose whether all its cars so drawn shall be drawn independently of or in connection with the trains of the other road.

It is no objection to an award of commissioners appointed under *St.* 1845, *c.* 191, to determine the rate of compensation to be paid by one railroad corporation for the drawing of its cars, passengers and merchandise over the road of another, that it assumes the number of passengers each month holding different kinds of tickets to be in proportion to the number of the ordinary independent and connected trains; or that it makes the compensation to depend upon the number of passengers and amount of merchandise, and upon the classes of tickets held by the passengers.

A reservation, in the charter of a railroad corporation, of a right to authorize other railroad corporations to enter upon and use this railroad, extends to a branch railroad purchased from another corporation whose charter contained no such reservation, although the legislature, since the purchase, have enacted that the corporation purchasing " shall have all the powers and privileges, and be subject to all the duties, restrictions and liabilities " set forth in that charter.

Commissioners appointed under *St.* 1845, *c.* 191, to determine the rate of compensation to be paid for drawing the cars, passengers and merchandise of one railroad corporation over the road of another, may include in their award a period before their appointment, if subsequent to the filing of the petition in court, and not covered by agreement of the parties; and their award, when accepted by the court, will relate back to that time.

It is no objection to an award of commissioners under *St.* 1845, *c.* 191, that it declares that each railroad corporation shall indemnify the other against all losses happening through its own or its servants' fraud and gross negligence or want of skill.

An award of commissioners under *St.* 1845, *c.* 191, is not invalidated by declaring that one railroad corporation, in case of the cars of another not arriving within ten minutes after time at the junction of the two roads, shall provide and " be allowed for an independent train, to be taken as soon as it conveniently can be; " and that frequent unreasonable want of punctuality in the arrival of such cars at the junction shall be compensated for in damages.

PETITION filed in Suffolk on the 15th of June 1857, under *St.* 1845, *c.* 191, for the appointment of commissioners to determine the compensation to be paid by the petitioners, for drawing their passengers, merchandise and cars over the respondents' railroad, from the junction of the two roads at West Cambridge to Bos-

ton, after the expiration of an existing contract between the two corporations upon this subject, which would terminate upon the 1st of September 1857.

The court, on the 16th of October, accordingly appointed three commissioners " to determine the rate of compensation to be paid by the said petitioners to the said respondents, for drawing over their road the passengers, merchandise and cars of the said petitioners." The material parts of the award of the commissioners are sufficiently stated below in the respondents' objections thereto, except these provisions, to which the second, twelfth and thirteenth objections respectively refer :

" The Lexington and West Cambridge Railroad Company shall have the privilege to elect the time for starting their independent trains, provided the time fixed for running the same shall not be within fifteen minutes of the times of a regular passenger train of the Fitchburg Railroad Company ; and so also of the extra special trains."

" Each of said companies shall be liable to indemnify the other against and hold it harmless from any loss or damage happening through the fraud, gross or blamable negligence or unskilfulness or wilful mismanagement of the other, or its officers or servants ; each company to be answerable for and indemnify the other against accidents or damage arising by reason of the insufficiency or defect of its own equipment or of its own railroad or structures.

" The Fitchburg Railroad Company's trains shall not be required to wait over ten minutes at the junction of the two roads, to connect with the Lexington and West Cambridge Railroad Company's train, at any time ; and, in case of the latter being left, shall be allowed for an independent train, to be taken as soon as it conveniently can be so. And frequent unreasonable want of punctuality in the down trains of the Lexington and West Cambridge Railroad Company in being at the junction shall be compensated for in damages."

The respondents objected to the acceptance of the award, for various reasons, so many of which as were urged upon the full court were as follows :

" 1st. Because the said commissioners prescribe the time for running the trains of the Lexington and West Cambridge Railroad Company, and thereby exceed the powers conferred upon them by this court.

" 2d. Because said commissioners give to said Lexington and West Cambridge Railroad Company the right to choose at what times the independent and special trains provided for in said award shall be run.

" 3d. Because said commissioners awarded that said Fitchburg Railroad Company shall have for said Lexington and West Cambridge Railroad Company five extra special independent passenger trains a year, for societies, holidays, schools, companies, &c., and that said Lexington and West Cambridge Railroad Company may elect when said trains shall be run.

" 4th. Because said commissioners have awarded that certain independent trains in said award mentioned, to be hauled by the said Fitchburg Railroad Company, shall stop only at such stations upon the Fitchburg Railroad as the Lexington and West Cambridge Railroad Company may elect.

" 5th. Because said commissioners have awarded that said Lexington and West Cambridge Railroad Company may elect whether the passengers and merchandise and cars to be hauled shall be hauled by an independent or a connected train.

" 6th. Because said commissioners have awarded that there should be presumed and taken to be, by connected trains each month, by each kind of ticket or passage, at the end of the month, the same proportion of the whole number as the number of connected trains in the common business of the two companies is to that of the whole number of trains for the month, both independent and connected — the extra special pas senger trains for holidays, societies, &c. not to be included in making such estimate.

" 7th. Because by the method selected by the commissioners establishing the compensation to be paid, such compensation is made to depend upon the number of passengers and amount of merchandise, instead of upon the service rendered.

" 8th. Because the commissioners have fixed different rates

of compensation for hauling the passengers of said Lexington and West Cambridge Railroad, according to the kind of ticket ['package ticket' or 'season ticket'] with which said passengers may be provided by said Lexington and West Cambridge Railroad, without reference to any agreement or rule of the Fitchburg Railroad Company.

" 9th. Because the commissioners have awarded that the Fitchburg Railroad Company should haul the merchandise, cars and passengers of the Lexington and West Cambridge Railroad over that part of the Fitchburg Railroad which was formerly the Charlestown Branch Railroad.

" 10th. Because said commissioners have fixed the rates of compensation for hauling the passengers, merchandise and cars of the Lexington and West Cambridge Railroad Company, from the first day of September 1857, which is a period anterior to the time of their appointment.

" 11th. Because said commissioners have fixed no time when said award shall take effect.

" 12th. Because the said commissioners have awarded that each of said companies shall indemnify the other and hold it harmless from all loss happening through the fraud, gross or blamable negligence or unskilfulness of the other.

" 13th. Because said commissioners have awarded that said Fitchburg Railroad shall furnish for the Lexington and West Cambridge Railroad an independent train, in case of delay at any time of over ten minutes in the arrival of the Lexington and West Cambridge Railroad at the junction of the two roads ; and that frequent and unreasonable want of punctuality in the down trains of the Lexington and West Cambridge Railroad shall be compensated for in damages."

At the hearing before *Merrick*, J., the parties agreed that part of the railroad of the respondents, over which the commissioners awarded that they should draw the passengers, merchandise and cars of the petitioners, was formerly part of the Charlestown Branch Railroad, which was purchased and held by the respondents by virtue of *St.* 1846, *c.* 21.   And the case was reserved for the consideration of the whole court.

23 *

*J. G. Abbott & J. Dana,* for the petitioners.

*E. H. Derby & H. C. Hutchins,* for the respondents. This petition was filed before the *St.* of 1857, *c.* 291, took effect, and the case is therefore to be governed by the *St.* of 1845, *c.* 191, §§ 2, 3, and the order of this court, appointing commissioners. That statute simply authorizes the commissioners, if the two corporations are unable to agree, " to determine and fix the rate of compensation " to be paid by one to the other, and " determine the stated periods at which said cars are to be drawn as aforesaid, having reference to the convenience and interest of said corporation and of the public who will be accommodated thereby."

(1.) But the order passed in this case authorized them only " to determine the rate of compensation," not the time of running the trains ; (2.) certainly not to give the petitioners the right of choosing the time of running independent trains, which might clash with the freight trains or the repairs of the road, or the police regulations of the respondents, who have by their charter exclusive control of the road. *St.* 1842, *c.* 84, § 4.

(3.) The commissioners had no authority to determine the number of independent trains ; nor (4.) to transfer from the respondents to the petitioners the right of determining at what stations the respondents' trains should stop ; nor (5.) by what kind of train their cars should be hauled ; nor (6.) to presume by arbitrary rule the number of passengers by connected trains.

(7.) The respondents are bound by *St.* 1845, *c.* 191, § 1, to haul the petitioners' cars for " a reasonable compensation," which should not be made to depend on the number of passengers and amount of merchandise hauled ; nor (8.) on the kind of tickets held by the passengers.

(9.) The charter of the Charlestown Branch Railroad Corporation did not contain the customary clause reserving a power to authorize other railroad corporations to enter and use that road. *St.* 1836, *c.* 187. The respondents, by purchasing the branch, pursuant to *St.* 1846, *c.* 21, acquired all the rights and privileges of that corporation. And the *St.* of 1855, *c.* 266, gave the peti-

tioners the right only of entering on and using the Fitchburg Railroad proper.

(10.) The commissioners had no power to cover in their award a period anterior to their own appointment. (11.) Their award does not show whether it is to take effect from their appointment, from the time when it was made, or from its acceptance by the court. The date is important; because by *St.* 1845, *c.* 191, § 2, no alteration can be made within one year.

(12.) The commissioners had no authority to award that each corporation should be responsible for the fraud or neglect of the other; nor (13.) to award that, in case of delay of the petitioners' train over ten minutes, the respondents should furnish an extra independent train ; nor that frequent and unreasonable delay of the petitioners should be compensated for in damages.

This case was decided in June 1860.

By the Court.* The appointment of these commissioners, and the powers vested in them, are not fixed by a special enactment, relating to these particular roads ; but, by a general law, *St.* 1845, *c.* 191, applicable to all similar cases. Such being the character of the law, in order that its provisions may be adapted to the various cases which may arise, the powers conferred by it are necessarily broad and unlimited, and to some extent discretionary, in order that persons suitably qualified in point of skill and experience may prescribe a rule of compensation suited to the particular case, taking into consideration all circumstances of day or night, running at particular hours, influenced as they must be by the number of passengers, the quantity of freight to be carried, and the like.

In putting a construction upon such a statute, where persons are appointed commissioners on the ground of their experience and ability to prescribe the modes of accomplishing certain results, and their powers are not defined, the legislature by necessary implication intends to invest them with all the powers appropriate and necessary to accomplish the purposes intended

1. The first objection to the acceptance of the award is, that

---

* HOAR, J. did not sit in this case.

the commissioners have prescribed the time for running the trains of the Lexington and West Cambridge Railroad Company, and thereby exceeded the powers vested in them by this court.

The powers of the commissioners are vested in them by law ; this court does nothing more than make the appointment of the commissioners, and that usually by the agreement of parties.

But we do not see how this exceeds their powers. The parties had agreed to no times for running trains ; none are stated in the petition or in the commission. If they could not be fixed by the commissioners, then the Fitchburg Railroad Company might have fixed times, altogether unsuited to the wants and purposes of the Lexington and West Cambridge Railroad Company. Suppose it suited the purpose of the Fitchburg Railroad Company to run a train from Fitchburg to Boston, late in the afternoon, reaching North Cambridge at six or seven o'clock, and from Boston to Fitchburg at seven in the morning. This would probably be unsuited to a local passenger train, extending ten or twelve miles from Boston, whose business would mostly consist in carrying passengers to the city in the morning to return them in the afternoon. Had the parties agreed upon the times of running trains, and given power to the commissioners to fix the rate, it would have been a real restriction upon their powers ; but that not being done, it appears to us that it was incident to the general power of the commissioners to prescribe the times of trains.

2. The second objection is, that the commissioners give to the Lexington and West Cambridge Railroad Company the right to choose at what times the independent and special trains shall be run.

It appears to us, that this objection is not supported by the award. Such latitude of choice is not given ; a right of choice is given with some limitations, which we think reasonable.

3. It is objected that the commissioners awarded five extra trains in the year for holidays, &c. and the privilege of fixing the times.

Why should they not ? If this was found to be a profitable part of the carrying business, by the Lexington and West Cam-

bridge Railroad Company, why should they not continue to enjoy it, on payment of an adequate compensation for drawing the cars. We see no excess of authority in this.

4, 5. The next two exceptions appear to us to come under some of the reasons already given. They seem to be reasonable modifications of the rights of the respective parties, in conducting their business, and well adapted to promote the accommodation of each, with as little interference as practicable.

6, 7, 8. The modes adopted by the commissioners, to ascertain the number of each class of passengers, and to determine the compensation to be paid to the respondents for drawing over their road the cars, passengers and freight of the petitioners, were within the authority conferred upon the commissioners by the *St.* of 1845, *c.* 191. See also *Boston & Worcester Railroad* v. *Western Railroad, ante,* 260.

9. It is objected that the commissioners have made no distinction, in requiring the Fitchburg Railroad Company to haul the cars of the Lexington and West Cambridge Railroad Company over that part of the Fitchburg Railroad, which was once the Charlestown Branch Railroad.

This objection, we think, is untenable. When the Fitchburg Railroad Company were authorized to purchase, and did purchase, the Charlestown Branch Railroad, it became a part of their own road, liable to the same duties as if the same had been built under their own charter. At the time when the act was passed authorizing the Lexington and West Cambridge Railroad Corporation to enter upon the Fitchburg Railroad in Cambridge, and use the same or any part thereof, in May 1855, the Charlestown Branch Railroad had become a constituent part of the Fitchburg Railroad.

10. It is objected that the commissioners have declared the principles on which the claims of the parties shall be settled for a period anterior to their appointment.

The court can perceive no excess of power in this. It was a period, subsequent to the filing of the petition, during which no agreement subsisted between the parties, and therefore was embraced in the reference to the commissioners.

11. The same consideration suggests an answer to the next objection. The award, when accepted by the court, relates back, and covers the whole period submitted to the determination of the commissioners. See *Boston & Worcester Railroad v. Western Railroad, ante*, 265.

12. The true meaning of the award of the commissioners is not that each corporation should be liable for the fraud or neglect of the other, but should be liable to the other for its own neglect. This is only declaring a principle of the common law, which would have been equally true, without their award. It forms no objection to the award.

13. The provision for an independent train " as soon as convenient," in case of delay at the junction of the two roads, is reasonable, and within the scope of the commissioners' authority. The provision imposing a liability for damages for frequent unreasonable want of punctuality may be treated as surplusage, which does not vitiate the award in other particulars.

*Award accepted and judgment accordingly.*